979 F.2d 217
 NOTICE: Federal Circuit Local Rule 47.8(b) states that opinions and orders which are designated as not citable as precedent shall not be employed or cited as precedent. This does not preclude assertion of issues of claim preclusion, issue preclusion, judicial estoppel, law of the case or the like based on a decision of the Court rendered in a nonprecedential opinion or order.
James W. DEATON, Petitioner,
v.
DEPARTMENT OF AGRICULTURE, Respondent.
 No. 92-3283.
 United States Court of Appeals, Federal Circuit.
 Sept. 25, 1992.
Rehearing Denied Oct. 20, 1992.
 
 Before MICHEL, PLAGER and RADER, Circuit Judges.
 PER CURIAM.
 
 DECISION
 
 1
 James W. Deaton (Deaton) petitions for judicial review of the October 8, 1991 decision of the Administrative Judge (AJ), Docket No. AT122191W0726, which upon denial of review on January 28, 1992 became the final decision of the Merit Systems Protection Board (MSPB or Board). 5 C.F.R. § 1201.113(b). At issue was Deaton's reassignment with no reduction of grade or pay from the position of Research Leader to that of Research Animal Scientist. This reassignment was appealed to the MSPB under the Individual Right of Action (IRA) provision of the Whistleblower Protection Act (WPA), 5 U.S.C. § 1221. The Board held that no corrective action was warranted. We affirm.
 
 DISCUSSION
 
 2
 This case arises out of a difference of scientific opinion between Deaton and his supervisors. In January 1989, Deaton's laboratory facility was selected to perform research on the pathogenicity and transmission of Salmonella enteritidis in commercial chicken flocks. S. enteritidis is a known human pathogen which can contaminate eggs and other foodstuffs. While it thrives and reproduces inside the human body, it does not fare well when exposed to the ambient environment.
 
 
 3
 Specifically, Deaton was instructed to perform a study with an "open flock" simulating commercial settings. Deaton felt that the proposed infection with and study of S. enteritidis in an open flock would inevitably contaminate the surrounding environment and place the nearby residents and commercial enterprises at risk. In response to Deaton's expressed reservations, Drs. Thiermann and Beard of the Department of Agriculture (DOA) visited the facility and discussed the proposed research with Deaton. Thiermann generated a memo dated April 17, 1989, in which he detailed facility modifications and other recommendations which were, in his view, sufficient to conduct the open flock research in safety. Deaton apparently disagreed; he continued to believe that the open flock research would result in contamination of the environment, and he continued to vigorously object to the project. In June of 1989, DOA decided to reassign the open flock project to another research facility.
 
 
 4
 Deaton later documented his conflict with management in letters to the Office of Inspector General (OIG) dated September 5, 1989 and October 11, 1989. On December 3, 1989, Deaton was reassigned to the non-managerial position of Research Animal Scientist. Deaton, believing that the reassignment was a direct consequence of his opposition to the open flock project and to his "whistleblowing" communications with the OIG, sought the aid of the Office of Special Counsel (OSC) in regaining his managerial position. After OSC declined to pursue Deaton's grievance, Deaton appealed the reassignment under the IRA provision of the WPA.
 
 
 5
 The WPA provides the IRA for employees whose personnel actions were taken in reprisal for disclosures of certain information. The disclosure must pertain to what the employee reasonably believes is a violation of law, rule or regulation, gross mismanagement, or "substantial and specific danger to public health or safety." 5 U.S.C. § 2302(b)(8). The reasonableness of that belief must of course be measured at the time of the disclosure, not at time of subsequent appeals. It is a factual determination, and as such we must uphold the MSPB unless we find its determination to be unsupported by substantial evidence. 5 U.S.C. § 7703.
 
 
 6
 Here we find that substantial evidence supports the MSPB's conclusion that Deaton's view of the dangers posed by the open flock experiment were not reasonable under the circumstances. Among other evidence, there was evidence concerning the nature of the risk from S. enteritidis, and the susceptibility of that pathogen to heat, light, and dryness. The record reflected communication between Drs. Thiermann and Beard (both of whom were found by the AJ to be credible and knowledgeable on the matter), and Deaton, and a memorandum from Dr. Thiermann to Deaton detailing the steps to be taken by Deaton's facility to contain any potential public health risk.
 
 
 7
 The MSPB found that there was more than sufficient evidence that the experiment did not pose a threat to health and safety, and therefore Deaton's beliefs were not reasonable. The MSPB concluded that there was no basis for Deaton's argument that his disclosures evidenced gross mismanagement or violations of law, rule, or regulation. Since there is substantial evidence in the record to support the MSPB's conclusion, we affirm the decision of the MSPB that corrective action was not warranted in this case.
 
 
 8
 No costs.